**RICHFIELD OIL CO. et al. v. CURRY et al.**
No. 6495.

Circuit Court of Appeals, Ninth Circuit.
Feb. 1, 1932.

Rehearing Denied March 7, 1932.

See also (D. C.) 50 F.(2d) 901.

Lane Summers and Hayden, Merritt, Summers & Bucey, all of Seattle, Wash., for appellants.

W. B. Stratton and Stratton & Kane, all of Seattle, Wash., for appellee Georgia Co.

M. W. Vandercook, of Seattle, Wash., for appellees Curry and others.

Before WILBUR and SAWTELLE, Circuit Judges.

WILBUR, Circuit Judge.

Two libels were filed against the oil tanker Kekoskee, belonging to the Richfield Oil Company, one on behalf of the crew of the Georgia, a small tug, and the other on behalf of the tug itself, for having salvaged the vessel from fire.

The two cases were consolidated. A decree was entered for the sum of $6,250 for the five members of the crew of the Georgia and $4,750 to the tug Georgia. Appellants claim that the allowance is excessive. The appellees contend that the award was not excessive, and while the proctors for the tug Georgia express the opinion that the proportion allowed its crew was unduly large, they acquiesce in the decree and seek to sustain it as reasonable.

The facts are fully set forth in the opinion of the trial judge, to which we refer for a detailed statement (D. C.) 47 F.(2d) 235. It will be sufficient for the purposes of this opinion to make a brief statement of the salient facts.

On February 3, 1930, the ship Kekoskee was lying in Smith Cove Water Way, Elliott Bay, Seattle, alongside Pier 40, discharging fuel oil from her tanks into the Surveyor, a government vessel operated by the Department of Commerce. Immediately previous thereto she had been discharging fuel oil into the pipe line on the pier, and the day before

had discharged her entire cargo of gasoline at the opposite pier (No. 41). The wooden pier (No. 40) caught fire about 1:40 p. m. Smoke enveloped the Kekoskee, and flames from the burning pier were blown by the breeze over and alongside the Kekoskee which caught fire, partly because of the heat and flames and partly because of the explosion of a tank of fuel oil. The crew of the Georgia, which was made fast to the head of the cove between the two piers, believed, and had reason to believe, that the tanker was discharging gasoline. Notwithstanding this belief they got under way, steamed past the Kekoskee, backed under her counter, took a line from the port quarter of the Kekoskee, and towed her out into open water, where the fire aboard was extinguished. The crew of the Georgia, at the time she made fast to the Kekoskee, believed that the gasoline aboard the Kekoskee might explode. It is obvious that such an explosion might cause the loss of the Georgia and her crew. The hazard was not so great as anticipated because of the fact that the gasoline had already been discharged. Nevertheless the presence of large quantities of oil on the tanker made the rescue hazardous. Appellants seek to minimize the hazard by calling attention to the fact that the tanker was equipped with fire fighting apparatus, including a system by which the oil tanks could be flooded with steam, thus diminishing the chances of conflagration. Photographs were taken by a member of the crew of the Surveyor showing the condition of the fire on the pier and on the wharf from time to time, and a moving picture was also taken in the same manner by Dr. Dorsey, a fathometer expert aboard the Surveyor.

These pictures were offered in evidence and have been sent to this court as exhibits on appeal. The crew of the Kekoskee, with the exception of four men in the engine room, abandoned the ship almost instantly upon the outbreak of the fire. The first mate, the pump man, and two others returned and assisted in the effort to get the ship out into the bay, operating the vessel and her engines while in tow. The value of the Kekoskee was about $450,000, the value of the Georgia $29,850. The fire damage to the Kekoskee was about $5,277.14.

From this brief statement of the facts and the fuller statement by the trial judge, it is obvious that Judge Neterer, who tried the case in the court below and who has had wide experience in admiralty law, gave full and careful consideration to all the elements properly involved in the determination of the salvage awards. See The Blackwell, 10 Wall. (77 U. S.) 1, 19 L. Ed. 870; The Sandringham (D. C.) 10 F. 556; The Egypt (D. C.) 17 F. 359; The Alamo (C. C. A.) 75 F. 602; The Flottbek, 118 F. 954 (C. C. A. 9); The Craster Hall (C. C. A.) 213 F. 436; The Livietta, 242 F. 195 (C. C. A. 5). In Malston Co. v. Atlantic Transport Co. et al. (C. C. A.) 37 F.(2d) 570, 571, the court said: " * * * We would not be justified in reversing his findings unless we are prepared to say that they are clearly wrong, which, under the record here, we certainly could not do. His findings are supported by evidence, and, while there is some evidence to the contrary, it is not such as would justify a reversal."

Decree affirmed.